## Appeal of FRANK-SIEVERS UNDERTAKING CO.

Docket No. 2194.    Submitted October 30, 1925.    Decided November 20, 1925.

>    Deductions on account of salary paid, *held* reasonable and allowable.

*Harry A. Frank, Esq.*, for the taxpayer.
*Robert A. Littleton, Esq.*, for the Commissioner.

Before STERNHAGEN, LANSDON, and ARUNDELL.

This is an appeal from the determination of a deficiency in income and profits taxes for the years 1919 and 1920. The deficiency arises from the disallowance of a portion of the amount paid as salary to the president of the corporation during the years in controversy.

### FINDINGS OF FACT.

The taxpayer was organized under the laws of the State of Missouri on April 13, 1909, since which time it has been engaged in the undertaking and funeral directing business in Joplin. During the years in question its capital was $10,000, divided into 100 shares, of which John P. Frank, the president of the company, owned 41 shares; his wife, Mattie E. Frank, 24 shares; and his daughter, Letha McFann, 5 shares. The secretary of the company, John J. Gees, owned 15 of the remaining shares, and the balance was owned by two other persons.

In December, 1918, an informal meeting of three of the directors of the corporation, viz, John P. Frank, Mattie E. Frank, and John J. Gees, was held, at which time the matter of salaries to be paid the officers of the corporation for the years 1918 and 1919 was discussed. At that meeting it was agreed that the salary of the president for the years 1918 and 1919 should be at the rate of $10,000 per year. At a meeting of the board of directors held in December, 1920, it was decided that the salary of the president for the year 1920 should be $8,000 per year. Salaries in the amounts authorized at these meetings were paid for the years 1919 and 1920. It was the custom at the directors' meetings to keep the minutes on sheets of paper and thereafter to copy into the regular minute book of the corporation what occurred at those meetings. The minute book does not contain any reference to the salaries authorized at the meetings of the directors.

By reason of the influenza epidemic the business of the taxpayer materially increased during the years 1918, 1919, and 1920. Frank was required by reason of this unusual situation to work both day and night and frequently put in 18 hours a day during the years in question. It was his duty to answer the first calls immediately after death, make the arrangements for the funerals and direct the funeral services. He was also the general manager of the company and did all its buying and selling and took care of the granting of credit.

During the years 1916 and 1917 Frank received as president of the corporation a salary of $1,800 and $2,400, respectively. During the year 1916 it was decided that only a minimum salary would be paid, as the company needed all available money to buy out the business of the Cunningham Undertaking Co., one of its competitors. In 1917 the salary was kept at a low level in order that the taxpayer might purchase the real estate of the Cunningham Co., and this real estate was so acquired in that year.

During the years 1919 and 1920 a small increase in salaries was authorized and paid to the employees and to Gees, the secretary of the company, and in 1919 the officers and employees received in addition to their salaries a bonus of $200 each.

During the year 1919 the gross income of the taxpayer was $38,698.14, and the salaries paid during that year totaled $11,900, of which amount the president received $10,200. During the year 1920 the gross income of the corporation was $35,992.42, and the amount of salaries amounted to $11,000, of which amount the president received $8,000 and the secretary $3,000. Dividends were declared by the corporation in the following amounts:

|  | Per cent. |
|---|---|
| 1916 | 15 |
| 1917 | 10 |
| 1918 | 15 |
| 1919 | 20 |
| 1920 | 15 |

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on 20 days' notice, in accordance with Rule 50.

### OPINION.

ARUNDELL: We can not say that the salary duly authorized and paid to the president of this corporation for the years 1919 and 1920 was an unreasonable one. So far as the record discloses the salary paid bore no direct relation to his stock holdings in the corporation. An unusual situation confronted the taxpayer during the years 1918, 1919, and 1920. By reason of the influenza epidemic its business expanded far beyond its normal volume. It was the personality of Frank and the trust and confidence that the people of Joplin had in him that caused them to prefer the taxpayer company to handle the preparation and interment of their dead. During the emergency he was required to and frequently did work 18 hours at a stretch. He was always the one to answer the first calls, to make the arrangements, and to direct the funeral services. The entire management of the business was on his shoulders and he was the directing head of the organization. The corporation as such made money and during the years in question paid liberal dividends. We believe the salary paid to Frank for the years in question to be reasonable and it should be allowed.